

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **INDICTMENT** |
| | : | |
| **v.** | : | **CRIMINAL NO. 1:22-CR-** 44 |
| | : | |
| **JEREMY RUSSELL** | : | **VIOLATIONS:**   **18 U.S.C. § 1349** |
| **TRAVON DUHART** | : | **18 U.S.C. § 1343** |
| **JOHNDERRIOUS LOVETT** | : | **18 U.S.C. 1344** |
| **SHARMAINE SIMPSON** | : | |
| **MARIO MEADOWS** | : | **SEALED** |
| | : | |
| | : | |
| | : | |

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

## I.    INTRODUCTION

### A. THE PAYCHECK PROTECTION PROGRAM

1)       The Coronavirus Aid, Relief and Economic Security or "Cares" Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2)       In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP

loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

3)      Among the types of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service ("IRS") on Form 1040, Schedule C, for a given tax year. The lending institution or loan processor used this information and documents to calculate the amount of money the individual was entitled to receive under the PPP.

4)      The United States Small Business Administration ("SBA") was an executive branch agency of the United States Government that provided support to small businesses. A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

5)      PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

## B. **THE ECONOMIC INJURY DISASTER LOAN PROGRAM**

1)      The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

2)      Another source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance was determined by the number of employees the applicant certified having.  The advances did not have to be repaid.

3)      In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.  The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

4)      EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL or advance were issued directly by the SBA.  EIDL funds could be used for payroll expenses, sick

leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If

the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same

purpose as the PPP funds.

### C. UNEMPLOYMENT INSURANCE AND PANDEMIC RELIEF FUNDING

1)      Unemployment Insurance ("UI") was a joint state and federal program that provided

monetary benefits to eligible beneficiaries. UI payments were intended to provide temporary

financial assistance to lawful workers who were unemployed through no fault of their own.  The

"CARES" Act expanded UI eligibility and increased UI benefits through Pandemic, Emergency

Unemployment Compensation (PEUC), Pandemic Unemployment Assistance Program ("PUA")

and Federal Pandemic Unemployment Compensation ("FPUC").

2)      Additionally, during the time frame August 2020 to December 2020, the federal

government provided grants to all U.S. states and territories from the Disaster Relief Fund

managed by the Federal Emergency Management Agency ("FEMA") under the Lost Wages

Assistance Program ("LWAP") to deal with substantial increases in the volume of UI claims

resulting from the pandemic.

### Georgia Department of Labor

3)      The Georgia Department of Labor ("GaDOL") oversaw and administered the UI program

in the State of Georgia. To establish a UI claim, a Georgia claimant must have worked within the

state and received minimum wage earnings during a specified base period, which was the specific

period used to determine whether the claimant earned enough wages to make a UI claim.

4)      A claimant seeking UI benefits in the State of Georgia filed an online application through

the GaDOL website, which required the claimant to identify his or her employer and provide his

or her wages and base period of employment, as well as Personal Identifying Information ("PII"),

including the claimant's name, date of birth, Social Security number, and address. The GaDOL relied upon the information in these applications to determine UI benefits eligibility.

5)    When a UI claim was approved, GaDOL distributed state and federal UI .benefits to the claimant.

### D. **THE DEFENDANTS AND THEIR CORPORATE ENTITIES**

1)    Defendant Jeremy Russell ("Russell") was a resident of Pelham, Mitchell County, Georgia. Russell was the Registered Agent for corporations known as L-Block Enterprises and Williams Lawn Services, LLC, both of which purported to do business from the residence located at 542 Liberia Street, Pelham, Mitchell County, Georgia.

2)    Defendant Travon Duhart ("Duhart") was a resident of Albany, Dougherty County, Georgia.  Duhart was the Registered Agent for a corporation known as Meadows and Duhart, LLLP which purported to do business at the same location as Meadows & Sons Holding LLC, d/b/a Priority Trans Logistics, at 523 West Broad Avenue, Albany, Dougherty County, Georgia.

3)    Defendant Johnderrius Lovett ("Lovett") was a resident of Albany, Dougherty County, Georgia.  Lovett was the Registered Agent for a corporation known as Delivery with Experience and Georgia Express Carriers LLC, which purported to do business from a residence located at 3308 Deans Drive, Albany, Dougherty County, Georgia.

4)    Defendant Sharmaine Simpson ("Simpson") was a resident of Pelham, Mitchell County, Georgia.  Simpson was the Registered Agent for a corporation known as Wynner Cyrcle Ent. LLC which purported to do business from the mobile home located at 219 Church Street, Pelham, Mitchell County, Georgia. Simpson together with J.C., an individual whose name is known to the Grand Jury, also purported operated a second corporation known as 10fo1 Entertainment, LLC at the same mobile home.  Simpson together with T.W., an individual whose name is known to the

Grand Jury, organized a third corporation known as T&S Retail which purportedly did business at 620 W. Jackson Street, Suite 5, Thomasville, Thomas County, Georgia. Simpson together with D.S. and K.T. whose identities are known to the Grand Jury also is listed as CFO on the 2021 Annual Registration for a corporation known as CoCo's 2.1 Inc. which purports to have moved from a principal address of 71 Georgia Pine Avenue, Blakely, Early County, Georgia to 461 College Street, Dawson, Terrell County, Georgia.

5)      Defendant Mario Meadows ("Meadows") was a resident of Albany, Dougherty County, Georgia. Meadows operated a corporation known as Meadows & Sons Holding LLC, d/b/a Priority Trans Logistics which did business at 523 Broad Avenue, Albany, Dougherty County, Georgia. Meadows was a partner in an entity known as Meadows and Duhart, LLLP which purported to do business at the same location as Meadows & Sons Holding LLC, d/b/a Priority Trans Logistics.

6)      Defendants Russell, Duhart, Lovett, and Simpson together organized a corporation known as J.T.L.S. Music Group which purported to do business from the residence located at 4191 Old Ga Hwy 3, Camilla, Mitchell County, Georgia.

## E. THE BANKS

1)      Regions Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation.

2)      Family Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation.

3)      Cross River, Ready Capital and Itria Ventures were authorized by the Small Business Administration to participate as a Paycheck Protection Program lender to small businesses.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud and Bank Fraud)

Beginning sometime on or about March 2020 the exact date being unknown, and continuing until on or about May 1, 2021, in the Albany, Columbus and Valdosta Divisions of the Middle District of Georgia, and elsewhere within the jurisdiction of the Court,

**JEREMY RUSSELL, TRAVON DUHART, JOHNDERRIOUS LOVETT,**
**SHARMAINE SIMPSON and MARIO MEADOWS**

Defendants herein, did knowingly combine, conspire, confederate, and agree with one another and with others, both known and unknown to the Grand Jury, to

1) commit an offense against the United States, that is, to knowingly and willfully devise, execute, and attempt to execute a scheme and artifice to defraud and to obtain money and property from:

   a) financial institutions;

   b) financial service companies;

   c) SBA; and,

   d) DHS-FEMA via Georgia Department of Labor

by means of materially false and fraudulent pretenses, representations and promises and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343; and,

2) execute a scheme and artifice to defraud financial institutions and to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of,

financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## OBJECT OF THE CONSPIRACY

It was the object of the conspiracy and scheme to defraud for the defendants to unjustly enrich themselves and their businesses by fraudulently obtaining:

1) loans from the SBA under the EIDL program;

2) PPP loans from financial institutions; and

3) Unemployment benefits to which they were not entitled from DHS-FEMA via Georgia Department of Labor

by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means whereby the conspiracy sought to be accomplished were as follows:

1)      The conspirators would and did create false documents such as tax returns and portions of tax returns containing false information, and which had never been transmitted to the IRS in order to bolster their false statements with respect to the income they stated had previously been generated by the business entities in whose name the false loan applications were completed.

2)      The conspirators would and did knowingly make false and fraudulent statements in support of their applications with respect to the purposes for which the funds would be used.

3)      The conspirators would and did direct proceeds of the fraudulently obtained loans be deposited into accounts created for their various corporate entities or over which they otherwise had dominion and control.

4)      The conspirators would and did fraudulently use the proceeds of these loans for their own personal benefit by making purchases for goods and services which were not authorized

under the programs funding the loans and by making transfers and withdrawals of funds for their personal unjust enrichment.

5)      The conspirators would and did transmit the false and fraudulent loan application materials by wire communication both from within the Middle District of Georgia and elsewhere within the jurisdiction of the Court.

6)      The conspirators would and did provide materially false revenue, expense, and payroll figures for these businesses on the loan applications.

7)      Defendants used the fraudulently obtained PII to make, and cause to be made, material misrepresentations to GaDOL, including that the claimants (1) formerly were employees of the fictitious employers, and (2) were eligible recipients of the UI benefits claimed.

8)      The fraudulent UI claims submitted to GaDOL contained materially false statements and representations, including false employment termination dates and made-up wages of purported employees.

9)      Co-conspirators provided false information to the GaDOL with the understanding that the GaDOL would rely on the information in the fraudulent claims to approve the payment of UI benefits, and issue payment.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

1)      Beginning in or around March 2020, and continuing through in or around May 1, 2021 in furtherance of both the conspiracy and the scheme, the defendants transmitted and caused to be transmitted by wire communication eighteen (18) fraudulent EIDL applications to the SBA through the SBA's internet website.

2)     On or about September 2, 2020, LOVETT, DUHART, RUSSELL and SIMPSON established a bank account for the entity JTLS Music Group at Regions Bank in Columbus, Georgia.

3)     On September 2, 2020, DUHART filed paperwork with the Georgia Secretary of State to incorporate JTLS Music Group. The paperwork identified DUHART, RUSSELL, SIMPSON and LOVETT as organizers of the business.

4)     On or about December 22, 2020, LOVETT, DUHART, RUSSELL and SIMPSON conspired to apply for a fraudulent EIDL Loan for JTLS Music Group via the SBA website, reporting each as co-owners of the business. Multiple false statements were made in support of the loan application, including:

   a) the business had $250,000 in gross revenue in the 12 months prior to January 31, 2020.

   b) the business had $50,000 in expenses in the 12 months prior to January 31, 2020.

   c) the business had 10 employees as of January 10, 2020.

5)     In furtherance of the scheme and conspiracy, DUHART, RUSSELL and SIMPSON provided LOVETT with their Social Security numbers and photos of their driver's licenses required to submit the fraudulent application.

6)     Based on these false statements made on the loan application, the EIDL loan was funded at $100,000 by the SBA and deposited into an account established and controlled by LOVETT, DUHART, RUSSELL and SIMPSON.

   a) On or about December 29, 2020, DUHART completed a wire transfer of $20,000 from the JTLS Regions Bank account to his personal account.

   b) On or about January 5, 2021, RUSSELL withdrew $17,000 from the JTLS Music Group Region's bank account in Columbus, Georgia.

c) SIMPSON withdrew approximately $16,741 in a variety of different ways from the JTLS Music Group Regions account from the time period September 2020 to February 2022.

7)   On or about January 28, 2021, DUHART and MEADOWS conspired to apply for a fraudulent EIDL Loan for Meadows and Duhart LLLP, via the SBA website, reporting each as co-owners of the business. Multiple false statements were made in support of the loan application, including:

a) the business had $80,000 in gross revenues for the twelve (12) months prior to January 31, 2020.

b) the business had $10,000 in expenses in the twelve (12) months prior to January 31, 2020.

8)   Based on these false statements made on the loan application, the EIDL loan was funded at $35,000 by the SBA and deposited into an account established and controlled by DUHART and MEADOWS.

9)   The defendants, in furtherance of the scheme, from IP addresses in the Middle District of Georgia, and elsewhere, also transmitted and caused to be transmitted by wire communication, the additional fraudulent EIDL applications set out in the table below to the SBA through the SBA's website, as set forth in the chart below for individual business entities:

| DATE | APPLICANT/ENTITY | LOAN AMOUNT SOUGHT |
|---|---|---|
| April 4, 2020 | Mario Meadows / Priority Trans Logistics | $6,000 |
| May 7, 2020 | Sharmaine Simpson / Wynner Cyrcle | $33,000 |
| May 15, 2020 | Johnderrius Lovett / Delivering with Experience | $10,000 |

| May 19, 2020 | Jeremy Russell / L-Block Enterprises | $10,000 |
| June 24, 2020 | Johnderrius Lovett/ Georgia Express Carriers | $15,000 |
| June 26, 2020 | Jeremy Russell/Williams Lawn Services | $10,000 |
| July 7, 2020 | Jeremy Russell/Sole Proprietor | $4,775 |
| July 9, 2020 | Mario Meadows/Priority Trans Logistics | $40,000 |
| July 25, 2020 | Mario Meadows/Priority Trans Logistics | $57,500 |
| August 6, 2020 | Mario Meadows/Priority Trans Logistics | $76,400 |
| December 22, 2020 | Sharmaine Simpson/Wynner Cyrcle | $35,000 |
| December 22, 2020 | Travon Duhart/DJ Tray Productions | $32,400 |
| December 22, 2020 | Mario Meadows/Priority Trans Logistics | $100,000 |
| December 22, 2020 | Jeremy Russell/L-Block Enterprises | $34,910 |
| February 12, 2021 | Johnderrius Lovett/Georgia Express Carriers | $125,000 |
| February 13, 2021 | Johnderrius Lovett/JD Entertainment | $17,500 |

10)     In support of each of the above-listed EIDL applications, the defendants provided materially false information including revenue and expense figures for the businesses on the loan applications.  Examples of other false information included in these applications include:

a. On May 7, 2020, SIMPSON applied for an EIDL Loan for Wynner Cyrcle from an IP address in Pelham, Mitchell County, Georgia. In the loan application, Simpson falsely stated that Wynner Cyrcle Ent. LLC was engaged in the business of agriculture and had 13 employees.  The loan was approved in the amount of $23,000 and an additional $10,000 advance was given.

b. On May 19, 2020, RUSSELL applied for an EIDL Loan for "L-Block Enterprises" from an IP address in Camilla, Mitchell County, Georgia. In this application Russell falsely stated that

L-Block had gross revenues for the twelve months preceding January 31, 2020 of $64,000.  Russell falsely stated that L-Block employed 8 individuals as of January 31, 2020.   Russell received a $10,000 cash advance from the SBA.

11)     Five (5) of the eighteen (18) EIDL loan applications were approved based on materially false and fraudulent pretenses, representations, and promises. As a result, fraudulent loans received from the EIDL loan program totaling $210,300.00 were funded to the co-conspirators by the SBA.

12)     In furtherance of the conspiracy and scheme, the defendants directed that EIDL loan proceeds be deposited into bank accounts the defendants controlled.

13)     Beginning in or around March 2020 and continuing through in or around May 1, 2021 in furtherance of both the conspiracy and the scheme, the defendants transmitted and caused to be transmitted by wire communication, six (6) PPP loan applications to various financial institutions.

14)     On or about March 14, 2021, DUHART and MEADOWS applied for a fraudulent PPP loan for Meadows and Duhart LLLP through "Cross River Bank," utilizing a fraudulent 940 Tax Return, never filed to the IRS. The fraudulent return falsely reported that Meadows and Duhart LLLP paid approximately $20,788 in "Federal Unemployment Taxes" hereinafter known as "FUTA."

15)     As a result of the materially false and fraudulent pretenses and representations made on the aforementioned PPP loan application for Meadows and Duhart LLLP, "Cross River" awarded the business a $80,204 PPP loan and deposited the funds into an account controlled by MEADOWS and DUHART.

16)     Between January 27, 2021 and March 27, 2022, MEADOWS conducted 16 financial transactions totaling in excess of $20,000 from accounts into which the proceeds of the fraudulently obtained loans sought by Meadows and Duhart LLLP were deposited.

17)     During the same time period identified above, for the same account referenced, DUHART conducted 19 financial transactions totaling in excess of $30,000 from accounts into which the proceeds of the fraudulently obtained loans sought by Meadows and Duhart were deposited.

18)     On or about March 2, 2021 RUSSELL, using an internet protocol address in Bainbridge, Decatur County, Georgia applied for a PPP loan. RUSSELL falsely stated that the purpose of the loan was to cover payroll costs, rent or mortgage expenses, and covered operations expenditures for L-Block Enterprises.

19)     RUSSELL indicated on the application that the average monthly payroll for the business was $8305.00 and that he was 100% owner of the business operating at 542 Liberia Street, NW, Pelham, Mitchell County, Georgia.

20)     In support of this application, RUSSELL attached a false 2019 Form 1040 Schedule C which indicated that L-Block Enterprises LLC had $99,660 in gross receipts for the 2019 tax year. This loan was awarded by Itria Ventures in the amount of $20,762.00. RUSSELL directed that the proceeds of this fraudulently obtained loan should be deposited in an account at Family Bank ending in the digits 1694 which he controlled.

22)     Eight (8) days later, on March 10, 2021, an individual known to the grand jury as "D.W." filed for a PPP loan and claimed that he was the 100% owner of a landscaping business being operated at the same address 542 Liberia Street, NW, Pelham, Mitchell County, Georgia.

Supporting his loan application, "D.W." submitted a false 2019 Form 1040 Schedule C which indicated that the landscaping business had gross receipts of $116, 736 for the 2019 tax year.

23)     In addition to the aforementioned PPP loans and in furtherance of the scheme, RUSSELL, DUHART and LOVETT submitted additional fraudulent PPP loan applications, as set forth in the chart below;

| DATE | APPLICANT | LOAN AMOUNT SOUGHT |
|---|---|---|
| March 21, 2021 | Jeremy Russell/L-Block Enterprises | $83,591.02 |
| March 21, 2021 | Travon Duhart | $61,976.00 |
| April 7, 2021 | Travon Duhart/DJ Tray | $56,015.00 |
| February 17, 2021 | Johnderrius Lovett | $8,300 |
| April 26, 2021 | Johnderrius Lovett | $8,300 |

24)     In support of his March 21, 2021 application referenced above, Russell once again falsely claimed that the business, L-Block Enterprises operated at 542 Liberia Street, NW, Pelham, Mitchell County, Georgia.  In support of this application, he falsely stated that L-Block Enterprises had 4 employee and an average monthly payroll of $33,436,41.  He further pledged that the purpose of this loan was for payroll expenses.  This loan application that was ultimately funded by Cross RiverBank.

25).     Five (5) of the seven (7) PPP loan applications were approved based on materially false and fraudulent pretenses, representations, and promises. As a result of the fraudulent loans $201,157 was funded to the co-conspirators by various PPP lenders.

26)     The co-conspirators misused the proceeds of the aforementioned EIDL and PPP loans, which according to loan paperwork, was earmarked for certain expenses associated with the businesses they purported to operate by instead purchasing personal items such as Gucci and Burberry bags and apparel.

27)     Other forms of misuse of the proceeds included personal travel expenses to cities such as Las Vegas and Miami and consumption of food, drink and entertainment at locations such as "The SandTrap" in Albany, Dougherty County, Georgia, Josephine's Lounge and Allure Gentlemen's Club both located in the Greater Atlanta Area.

28)     Finally, the co-conspirators withdrew over $700,000 in cash from the associated accounts in some instances displayed by them on social media and/or used in the purchase/lease of vehicles and other expenses unknown to the Grand Jury but not consistent with stated purposes of the loans from which the funds originated.

29)     In addition to the aforementioned PPP and EIDL loans and in furtherance of the scheme, RUSSELL, and SIMPSON submitted additional fraudulent UI and LWA program applications to obtain and attempt to obtain funds via DHS-FEMA, as set forth in the chart below;

| DATE | APPLICANT | PROGRAM THROUGH WHICH FUNDS SOUGHT |
|------|-----------|------------------------------------|
| April 15, 2020 | Sharmaine Simpson | FPUC/LWA/PUA |
| May 4, 2020 | Jeremy Russell | PUA |

**All in Violation of Title 18, United States Code, Section 1349 i/c/w/ Title 18, United States Code Sections 1343 and 1344.**

## COUNTS 2 THROUGH 26

## (Wire Fraud)

The allegations in the Introduction are incorporated by reference herein.

On or about the dates set forth below, in the Middle District of Georgia, and elsewhere, and for the purpose of executing the scheme and artifice to defraud described above, the defendants,

**JEREMY RUSSELL, TRAVON DUHART, JOHNDERRIOUS LOVETT,**

**SHARMAINE SIMPSON and MARIO MEADOWS**

aided and abetted by one another and by others both known and unknown to the Grand Jury, did knowingly cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, that is, the following EIDL and PPP loan applications, set forth in the chart below:

| COUNT | DATE | WIRE COMMUNICATION | LOAN AMOUNT SOUGHT |
|-------|------|--------------------|--------------------|
| 2 | April 2, 2020 | Online submission of EIDL application for Meadows and Sons Holdings, d/b/a Priority Trans Logistics | $6,000 |
| 3 | May 7, 2020 | Online submission of EIDL application for Wynner Cyrcle | $33,000 |
| 4 | May 15, 2020 | Online submission of EIDL application Delivering with Experience | $10,000 |
| 5 | May 19, 2020 | Online submission of EIDL application for L-Block Enterprises | $10,000 |
| 6 | June 24, 2020 | Online submission of EIDL application for Georgia Express Carriers | $15,000 |

| 7 | June 26, 2020 | Online submission of EIDL application for Williams Lawn Services | $10,000 |
|---|---|---|---|
| 8 | July 7, 2020 | Online submission of EIDL application for Jeremy Russell | $4,775 |
| 9 | July 9, 2020 | Online submission of EIDL application for Priority Trans Logistics | $40,000 |
| 10 | July 25, 2020 | Online submission of EIDL application for Priority Trans Logistics | $57,500 |
| 11 | August 6, 2020 | Online submission of EIDL application for Priority Trans Logistics | $76,400 |
| 12 | December 22, 2020 | Online submission of EIDL application for JTLS Music Group | $100,000 |
| 13 | December 22, 2020 | Online submission of EIDL application for Sharmaine Simpson/Wynner Cyrcle | $34,900 |
| 14 | December 22, 2020 | Online submission DJ Tray Productions | $32,500 |
| 15 | December 22, 2020 | Online submission of EIDL application for Mario Meadows/Priority Trans Logistics | $100,000 |
| 16 | December 22, 2020 | Online submission of EIDL application fo L-Block Enterprises | $34,910 |
| 17 | January 28, 2021 | Online submission of EIDL application for Meadows and Duhart | $35,000 |
| 18 | February 12, 2021 | Online submission of EIDL application for Georgia Express Carriers | $125,000 |
| 19 | February 14, 2021 | Online submission of EIDL application for JD Entertainment | $17,500 |

| 20 | February 17, 2021 | Online submission of PPP loan application for Johnderrius Lovett | $8,300 |
| 21 | March 2, 2021 | Online submission of PPP loan application for Jeremy Russell (Sole Proprietorship) | $20,762 |
| 22 | March 14, 2021 | Online submission of PPP loan for Meadows and Duhart | $80,204 |
| 23 | March 21, 2021 | Online submission of PPP loan application for L-Block Enterprises | $83,591 |
| 24 | March 21, 2021 | Online submission of PPP loan application for Travon Duhart | $61,976 |
| 25 | April 7, 2021 | Online submission of PPP loan application Travon Duhart | $56,015 |
| 26 | April 23, 2021 | Online submission of PPP loan application for Johnderrius Lovett | $8,300 |
| | **Total** | | **$1,079,233.02** |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

<u>**FORFEITURE NOTICE**</u>
**(18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2),
and 28 U.S.C. § 2461(c) – Criminal Forfeiture)**

1.      The allegations contained in Counts One through Twenty-Six of this Indictment are hereby re-alleged and incorporated by reference into this Notice for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c); and/or Title 18, United States Code, Section 982(a)(2).

2.      Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1349, in connection with Title 18, United States Code, Sections 1343 and 1344 set forth in Count One; and/or Title 18, United States Code, Section 1343 set forth in Counts Two through Twenty-Six of this Indictment, the defendant(s),

**JEREMY RUSSELL, TRAVON DUHART, JOHNDERRIOUS LOVETT,**

**SHARMAINE SIMPSON and MARIO MEADOWS,**

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), or a conspiracy to commit such offense; and/or any property, constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violations, or a conspiracy to commit such offense(s), pursuant to Title 18, United States Code, Section 982(a)(2), including, but not limited to, a money judgment in an amount to be determined.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

(a)      cannot be located upon exercise of due diligence;

(b)      has been transferred, sold to or deposited with, a third person;

(c)      has been placed beyond the jurisdiction of the court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c) through Title 18, United States Code, Section 981(a)(1)(C), and Title 18, United States Code, Section 982(b)(1).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982, and 28 U.S.C. § 2461(c).


A TRUE BILL.

*s/Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

PRESENTED BY:

PETER D. LEARY
UNITED STATES ATTORNEY

LEAH E. MCEWEN
ASSISTANT UNITED STATES ATTORNEY

*Filed in open court this* ___15___ *day of*
_____Dec_____ *A.D. 20*_22_.


_____
**Deputy Clerk**

21